UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC LITTLETON,

        Plaintiff,

v.

        Case No. 2:24-cv-10333
        District Judge Jonathan J.C. Grey
        Magistrate Judge Anthony P. Patti

JOHN DOE,
KATELYN CAIRNDUFF,
ROGER HUNTER,
UNKNOWN (Herbert) LYONS,
UNKNOWN MILLER,
MARIA MONTGOMERY, and
UNKNOWN (Anthony) WYATT,

        Defendants.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY MDOC DEFENDANTS WYATT, LYONS & HUNTER'S EXHAUSTION-BASED MOTION FOR SUMMARY JUDGMENT (ECF No. 18) and GRANT DEFENDANTS CAIRNDUFF AND MONTGOMERY'S EXHAUSTION-BASED MOTION FOR SUMMARY JUDGMENT (ECF No. 19)**

**I.**   **RECOMMENDATION**: The Court should **DENY** MDOC Defendants Wyatt, Lyons & Hunter's exhaustion-based motion for summary judgment (ECF No. 18) and **GRANT** Defendants Cairnduff and Montgomery's exhaustion-based motion for summary judgment (ECF No. 19).

**II.**   **REPORT**

    **A.**   **Background**

Eric Littleton (#596447) was paroled from the Michigan Department of Corrections (MDOC) on February 13, 2025 (*see* www.michigan.gov/corrections, "Offender Search.") and has since updated his address with the Court (*see* ECF No. 41). In February 2024, when Littleton was located at the MDOC's Gus Harrison Correctional Facility (ARF), he initiated this lawsuit against seven (7) Defendants, each described as associated with the MDOC's Woodland Center Correctional Facility (WCC).

Plaintiff is proceeding *in forma pauperis*; thus, the United States Marshal Service (USMS) has facilitated service of process. (ECF Nos. 2, 4, 5, 8-11, 14-15.) Defendants Cairnduff and Montgomery (of ATC Healthcare) and Hunter, Lyons, and Wyatt (MDOC employees) have appeared via counsel. (ECF Nos. 12, 13, 16; ECF No. 19, PageID.120, 127-128.)[1]

### B.    Instant Motions

Judge Grey has referred this case to me for all pretrial proceedings. (ECF No. 24.) Currently before the Court are the appearing parties' exhaustion-based motions for summary judgment (ECF Nos. 18, 19), as to which Plaintiff has filed

---

[1] As to the other two Defendants, the status of Plaintiff's case against John Doe (transportation officer) and Unknown Miller (corrections officer), including Miller's pending motion for summary judgment (ECF No. 32), will be discussed at the forthcoming video status conference, which is currently scheduled for February 27, 2025. (*See* Text-Only Order [Feb. 4, 2025]; ECF Nos. 34, 35, 39.)

responses (ECF Nos. 21, 22), and MDOC Defendants Wyatt, Lyons, and Hunter have filed a reply (ECF No. 23).

### C.    Fed. R. Civ. P. 56(a)

The movants bring their exhaustion-based dispositive motions pursuant to Fed. R. Civ. P. 56(a).  Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf*. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC*

3

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . . . [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute.") (internal quotation marks and citations

omitted). Moreover, "the mere existence of a scintilla of evidence that supports the

nonmoving party's claims is insufficient to defeat summary judgment." *Pack v.*

*Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations

omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving

party is merely colorable or is not significantly probative. *City Management Corp.*

*v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words,

summary judgment is appropriate when "a motion for summary judgment is

properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ." *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

4

**D.    Discussion**

**1.    Factual allegations**

The facts underlying Plaintiff's complaint stem from the alleged events of December 10, 2021, when Plaintiff was located at WCC, which he describes as "an acute mental health facility operated by the [MDOC]."  (ECF No. 1, PageID.24 ¶ 1.)  Plaintiff alleges to have been on suicide watch for the prior three weeks "due to multiple self-injurious activities and threats of . . . wanting to kill himself."  (*Id.*, ¶ 2),

Plaintiff's specific allegations concern an approximate 7-hour period, beginning with a 2:04 p.m. decision to transfer Plaintiff to Macomb Correctional Facility (MRF) and his 5:12 p.m. discovery of that decision, after which he self-harmed in his WCC cell.  (*Id.*, ¶¶ 3-4.)  He describes having been in WCC's shower cage from 5:12 p.m. -5:31 p.m. (*id.*, ¶¶ 5-7) and in WCC's intake strip cage from 5:31 p.m. to 6:31 p.m. (during which he suffered a "2 cm laceration above his right eyebrow which immediately began to bleed profusely") (*id.*, PageID.24-25 ¶¶ 8-15), challenges the assessment of his medical treatment and the decision to transport him (*id.*, PageID.26 ¶¶ 16-19), and describes his 2-hour transport to MRF, at which he claims to have arrived at 9:02 p.m.  (*See id.*, PageID.26 ¶¶ 20-21.)

According to Plaintiff, upon arrival at MRF, he was not processed but was instead sent to Henry Ford Macomb Hospital, where he received "sutures to the laceration above his right eyebrow," as well as "a CT scan to his head and cervical spine." (*Id*., PageID.26-27 ¶¶ 22-23.) He returned to MRF on December 11, 2021 at around 1:58 a.m., and, on April 8, 2022 was diagnosed with "post traumatic migraine headaches – chronic (ICD-10 643.909)[.]" (*Id*., PageID.27 ¶¶ 23-24.)

### 2. Basis for Plaintiff's claims

Plaintiff identifies the WCC-located Defendants as transportation officers (John Doe and Unknown Lyons), nurses (Cairnduff, Hunter, and Montgomery), and corrections officers (Unknown Miller and Unknown Wyatt). (ECF No. 1, PageID.2-3, 14, 16.) He brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to a serious medical need in violation of the Eighth Amendment to the United States Constitution. (ECF No. 1, PageID.3-4, 23.)

In his description of "how each Defendant acted under the color of law," Plaintiff contends that each of the seven Defendants acted contrary to the MDOC's policies concerning "medical emergencies in a correctional facility" – *i.e.*, MDOC PD 03.04.125 ("Medical Emergencies") ¶¶ I, J – and each of them "saw that Plaintiff Littleton's 2 cm laceration was bleeding profusely . . . ." (*Id*., PageID.18-21; *see also id*., PageID.31; ECF No. 21, PageID.191.) Plaintiff further claims

6

that:  (a) <u>Cairnduff</u>, <u>Hunter</u>, and <u>Montgomery</u> are healthcare professionals who "did not escalate his care so that he could receive the emergency medical attention required for his severe medical condition[,]" and, overall, "made a medical judgment so bad it fell below professional medical standards[;]" (b) <u>Wyatt</u> (as well as <u>Miller</u>) "did not escalate Plaintiff Littleton's severe medical condition as required[;]" and, (c) <u>Lyons</u> (as well as <u>John Doe</u>) "placed him into the transport van anyway[,]" and, "during the nearly 2-hour transport to [MRF] . . . again did nothing to address Plaintiff Littleton's severe medical need and cries for help due to his severe pain."  (ECF No. 1, PageID.18-21.)[2]

### 3.   Exhaustion of available administrative remedies

#### a.   42 U.S.C. § 1997e(a)

In each of the motions currently before the Court, Defendants argue that Plaintiff has not exhausted his administrative remedies as to his claims against them.  (ECF No. 18, PageID.93; ECF No. 19, PageID.132.)  The statute governing

---

[2] To the extent Plaintiff's prayer for relief requests appointment of counsel to represent him "due to his severe mental ill[n]ess and inability to represent himself[,]" (*id.*, PageID.5-6), such relief is best sought by way of a separately filed petition for recruitment of counsel under 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel.").  Now that he has been released from prison, he may have a greater chance of success at retaining counsel on his own.  Plaintiff is also reminded of the option to pursue legal assistance through the *U of D Mercy Law School Federal Pro Se Legal Assistance Clinic*, which has an office at this courthouse and can be contacted by telephone (313-234-2690) or e-mail (proseclinic@udmercy.edu).

prisoner lawsuits provides, in part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement . . . requires 'proper' exhaustion, which includes compliance with a state agency's timeliness deadlines." *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Nonetheless, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 636 (2016).

### b. MDOC PD 03.02.130 ("Prisoner/Parolee Grievances")

The MDOC's grievance procedure explains that "[c]omplaints filed by prisoners regarding grievable issues . . . serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." MDOC PD 03.02.130 ¶ C (effective Mar. 18, 2019). (ECF No. 18-2, PageID.99.) Among other provisions, the policy directive provides:

> Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included.  Information should be confined to the form and not written on the back, sides, or margins of the form, or in the response area.  Additional pages may be attached to the grievance form if necessary to provide required information; however, grievants are encouraged to limit the information to the grievance form itself.

MDOC PD 03.02.130 ¶ S.  (ECF No. 18-2, PageID.102.)

Moreover, there are several provisions of this policy concerning investigative responsibilities.  For example, "[t]he Step I Grievance Coordinator shall ensure that a thorough investigation was completed for each Step I grievance accepted . . . [,]" "[t]he Grievance Coordinator shall ensure that any additional investigation was completed as necessary for each Step II grievance accepted . . . [,]" and "[t]he Manager of the Grievance Section shall ensure that any additional investigation is completed as necessary for each Step III grievance accepted . . . ." *Id.*, ¶¶ CC, GG, II.  (ECF No. 18-2, PageID.104-105.)

### 4. Whether WCC-21-12-1174-26a exhausts Plaintiff's claims against the MDOC and contract nurse Defendants?

Plaintiff's MDOC Prisoner Step III Grievance Report lists only one grievance (WCC-21-12-1174-26a) relevant to the instant complaint.  (*See also* ECF No. 18-3, PageID.110; ECF No. 19-3, PageID.149.)  MDOC Defendants Wyatt, Lyons, and Hunter contend that WCC-1174 does not operate to exhaust the claims against them, because "the focus of WCC-1174 at Step I is the alleged use of force by the

non-defendant Corrections Officers which caused his alleged injury, and not the

conduct of the WCC medical staff or the transport officers that form the basis of

his complaint." (ECF No. 18, PageID.94.) Cairnduff and Montgomery contend

that WCC-1174 does not name or identify them at Step I, and they "are also not

identified, at all, in his various steps through the grievance appeal process . . . ."

(ECF No. 19, PageID.132.)

### a.    Step I

On December 14, 2021 – *by which time Plaintiff was at MRF* – Plaintiff

completed WCC-1174 regarding the December 10, 2021 incident at WCC.[3]

Plaintiff stated that MDOC PD 03.03.130 ("Humane Treatment and Living

Conditions for Prisoners") was violated at approximately 5:30 p.m. when, in the

"strip cage," he was "thrown face down to [the] tile floor by C.O. Heinonen and

other officers[,]" which "caused a deep cut above [his] right eye and face." He was

"then released and transported to [MRF] without being medical[ly] cleared by a

doctor." He was "soaked in blood" when he arrived at MRF, and "health care had

---

[3] Plaintiff claims to have sought and received the assistance of a Legal Writer to complete this form. (ECF No. 21, PageID.170-171; *id*., PageID.199-202 [MDOC PD 05.03.116 ("Prisoners' Access to the Courts")]; ECF No. 22, PageID.220-221.) Indeed, his circumstances may have warranted such help. Attached to Plaintiff's responses are McInnis's 1:58 a.m. December 11, 2021 MRF nursing notes, which indicate that Plaintiff was assigned to a housing unit "to have a POA [prisoner observation aide] and be in a suicide prevention gown." (ECF No. 21, PageID.188; ECF No. 22, PageID.250-251.)

to [immediately] send [him] to Macomb E.R. to rec[e]ive 8 stitches for [his] face."

(ECF No. 18-4, PageID.118; ECF No. 19-4, PageID.157.)  WCC-1174 was

received at Step I on December 27, 2021, on which date M. Siler responded:

"Grievant not housed at WCC.  Issue will be investigated and handled

administratively."  (*Id.*; *see also* ECF No. 1, PageID.35.)

Step I of WCC-1174 addresses some of the information sought by MDOC

PD 03.02.130 ¶ S (*see* ECF No. 18-2, PageID.102), because it clearly mentions

that the incident being grieved occurred on December 10, 2021 at approximately

5:30 p.m. (*i.e.*, when, date, time) in the WCC "strip cage" (*i.e.*, where, place).

(ECF No. 18-4, PageID.118; ECF No. 19-4, PageID.157.)  However, the only

WCC individuals mentioned (*i.e.*, who, names) are "C.O. Heinonen and other

officers[,]" who allegedly threw Plaintiff "face down to [the] tile floor . . . [,]" and

the parties are at odds about the focus or scope of the grievance (*i.e.*, what, why,

how).

### i. Does Step I encompass claims related to treatment or transport?

The Court is mindful of the MDOC Defendants' assertions that "the subject

of the grievance is determined by what the grievant stated in the grievance . . . [,]"

and that "[w]ithout specific allegations against [Wyatt, Lyons, or Hunter] at Step I

for WCC-1174," Plaintiff "did not put them on notice that he was challenging their

individual conduct."  (ECF No. 23, PageID.259.)  Still, other content within

11

Plaintiff's Step I grievance (*i.e.*, what , why, how) arguably encompasses the treatment he received after suffering the 2 cm laceration and the assessment for transfer to MRF.  For example, in one of his responses, Plaintiff points out that his Step I grievance mentions a violation of MDOC PD 03.03.130 and complains he was "released and transported to [MRF] without being medical[ly] cleared by a doctor[,]" even though he was "soaked in blood[.]"  (*Id*., PageID.171; ECF No. 18-4, PageID.118; ECF No. 19-4, PageID.157.)  Thus, he contends, the MDOC Defendants and Defendant Nurses were "indirectly" named at Step I.  (ECF No. 21, PageID.175; ECF No. 22, PageID.225.)  He also contends this phase "provided the MDOC with sufficient detail and a fair opportunity under the circumstances, to address the problems that form the basis of this lawsuit."  (ECF No. 22, PageID.228.)

Moreover, although MDOC PD 03.04.125 is not expressly cited in the Step I grievance, Plaintiff points to this "medical emergencies" policy to illustrate Defendants' responsibilities.  He suggests each MDOC Defendant had a responsibility to ensure he was "medically fit for transport," and contends that allowing him "to be transported for nearly 2-hours" did not comply with MDOC PD 03.04.125 ¶ I ("Whenever a person is determined to be in need of emergency medical attention, employee response to that emergency shall be *as soon as possible* and in accordance with their training.") (emphasis added).  (ECF No. 21,

12

PageID.175.)  Plaintiff makes a similar argument as to contract Defendants

Cairnduff and Montgomery, citing MDOC 03.04.125 ¶ J ("Movement of a

seriously ill or injured person, including mode of transportation, shall be consistent

with accepted principles of first aid and as directed by Health Care employes

unless  there is an immediate physical threat to the injured person . . . .") and

contending the nurses "would have played a role in that process, as health care

staff."  (ECF No. 22, PageID.225, 228.)  (*See also* ECF No. 1, PageID.31; ECF

No. 21, PageID.191; ECF No. 22, PageID.217-219.)  Plaintiff also contends the

nurses' failure to follow ¶¶ I, J of MDOC PD 03.04.125 triggered a violation of

MDOC PD 03.04.100 ("Health Services") ¶ P ("Medical and Mental Health Staff

are required to immediately report any knowledge, suspicion, or information

regarding an incident of sexual abuse, sexual harassment, or other significant rule

violation.").  (ECF No. 22, PageID.218; ECF No. 22, PageID.238.)

### ii.    Are names required at Step I?

However, even if the Court broadly construes the subject matter of

Plaintiff's Step I grievance to include claims related to treatment or transport (*i.e.*,

what, why, how), WCC-1174 does not name any of the movants in the initial

grievance.  Preliminarily, Plaintiff questions in his response whether the policy

requires names to be included at Step I, noting that the form (CSJ-247A) itself does

"not state that all names must be included[,]" contending that MDOC PD

03.02.130 "does not expressly state that this must be done at the Step I Grievance level[,]" and suggesting the legal writer did not advise Plaintiff that "he must list the parties' names" at Step I.  (ECF No. 21, PageID.171-173; ECF No. 22, PageID.221-222.)  However, while Plaintiff contends MDOC PD 03.02.130 is "unclear," (*id*., PageID.172, 221), the Sixth Circuit has stated:  "Under the Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing MDOC PD 03.02.130 ¶ T [effective Dec. 19, 2003]).  (ECF No. 23, PageID.259.)

Moreover, although Plaintiff points out that *Step I* WCC-1174 "was not rejected . . . for failure to identify all of the responsible individuals, or for any other procedural failure[,]" (ECF No. 21, PageID.178; ECF No. 22, PageID.228), the Sixth Circuit has stated that, where a Plaintiff has named an individual at Step I – here, CO Heinonen – "prison officials would naturally assume that [Plaintiff] complied with the requirement to name those involved, and defendants cannot be said to have waived the exhaustion defense when they had no way of knowing that they would be the subject of a later lawsuit." *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019).  (ECF No. 23, PageID.260.)

### iii.   Did Plaintiff have knowledge of the names of the individuals he intended to grieve?

Although Plaintiff did not name any of the movants at Step I, he offers a plausible explanation for not doing so.  True, "[t]he issues [Plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."  *Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002).  (ECF No. 23, PageID.260.) However, Plaintiff contends he "did not know the MDOC Defendants [or the nurses] prior to December 10, 2021, the date of the incident[,]" he asked the legal writer "how to address not knowing the names of the parties," and Plaintiff was "advised to request his medical records to learn the names of the healthcare staff . . . [,]" which Plaintiff did on December 14, 2021.  (ECF No. 21, PageID.172; ECF No. 22, PageID.221-222.)  *See also* MDOC PD 03.04.108 ("Prisoner Health Information") ¶ S (ECF No. 21, PageID.204-207).  Plaintiff also contends he was "advised to consult with the counselor to learn the names of the officers from the Incident Report."  (ECF No. 21, PageID.172.)  Thus, Plaintiff claims, he was "unable to include the MDOC Defendants' names on the Step I Grievance Form." (*Id.*)  Moreover, had he waited until he had "obtained the requested documents / information . . . to learn the names of the MDOC Defendants [or nurses]," his Step I grievance would have been tardy under MDOC PD 03.02.130 ¶¶ Q, W (*see* ECF

15

No. 18-2, PageID.102-103). (*Id.*, PageID.173; *see also id.*, PageID.174; ECF No. 22, PageID.219-220, 222.)

Additionally, Plaintiff suggests the investigative component of the MDOC's grievance policy bears some responsibility, pointing to Siler's December 27, 2021 response that the "issue will be investigated and handled administratively[,]" (ECF No. 19-4, PageID.157), noting the grievance "was not rejected," and, if it had been investigated, "the names of the MDOC Defendants [and the nurses] would have been learned[,]" further contending this "failure to investigate" violates MDOC PD 03.02.130 ¶¶ CC, GG, II. (ECF No. 21, PageID.173; ECF No. 22, PageID.222-223; ECF No. 18-2, PageID.104-105.) Similarly, Plaintiff contends that, if *he* learned of contract Defendants Cairnduff and Montgomery's names pursuant to a medical records request, then MDOC officials "would have learned of their names[,] too[,]" upon a "thorough MDOC investigation[.]" (ECF No. 22, PageID.225.)[4] Indeed, Plaintiff observes:

> Where a prisoner is not able to identify all appropriate personnel in compliance with the grievance procedure, there is no failure to exhaust. *See e.g., Merriweather v. Zamora,* 2006 WL 2711809, *9 (E.D.Mich.2006), citing, *Thomas v. Woolum,* 337 F.3d 720, 734 (6th Cir.2003) ("[A]n inmate need not identify each officer by name when the identities of the particular officers are unknown."); *Shoucair v.*

---

[4] Attached to Plaintiff's responses are Montgomery's 5:31 p.m. December 10, 2021 WCC nursing notes (ECF No. 22, PageID.253), Cairnduff's 5:35 p.m. December 10, 2021 WCC nursing notes (*id.*, PageID.255), and Roger W. Hunter's December 10, 2021 6:31 p.m. WCC nursing note (ECF No. 21, PageID.195). It is not clear when Plaintiff received these records.

16

> *Warren,* 2008 WL 2033714, *8 (E.D.Mich.2008) ("[N]othing in
> *Woodford* or *Jones* requires a grievant to somehow identify persons or
> information he does not have or cannot reasonably obtain.").

*Benson v. Brunette*, No. 12-10095, 2013 WL 1301551, at *4 n.5 (E.D. Mich. Feb.

25, 2013) (Whalen, M.J.), *report and recommendation adopted*, No. 12-CV-10095,

2013 WL 1283476 (E.D. Mich. Mar. 28, 2013) (Friedman, J.). (*See* ECF No. 21,

PageID.182; ECF No. 22, PageID.231.)

### iv. Did Plaintiff attempt to describe the individuals he intended to grieve?

Even if a Plaintiff does not know the names of the individuals he intends to

grieve, he must do what he can to describe them. This Court, while discussing an

identical provision of a prior version of MDOC PD 03.02.130 (effective July 9,

2007) has explained "[t]here is a limited exception to this rule in certain situations

where an inmate does not know the name of the person being grieved." *Watson v.*

*Jamsen*, No. 16-13770, 2017 WL 9477709, at *3 (E.D. Mich. Aug. 11, 2017)

(Whalen, M.J.), *report and recommendation adopted*, No. 16-CV-13770, 2017 WL

4250477 (E.D. Mich. Sept. 26, 2017) (Parker, J.). "However, an inmate must still

describe the person or persons against whom he has a complaint with sufficient

information 'to alert the prison officials to the problems so that the prison has a

chance to address the claims before they reach federal court.'" *Watson*, 2017 WL

9477709, at *3 (quoting *D'Andrea v. Rodriguez*, 2006 WL 1997385, at *2 (W.D.

Mich. 2006), citing *Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir.2003)) (finding

17

Watson's "very general statement that he is grieving 'any and all medical staff'"

did not satisfy MDOC PD 03.02.130's requirements or those of *Thomas*).  As

another court has explained:

> Even if Plaintiff was unaware of Defendants' names, he was still
> required to file a grievance attempting to place prison officials on
> notice of the alleged wrongful conduct. *See, e.g., Napier v. Laurel
> County, KY.,* 636 F.3d 218, 223–24 (6th Cir.2011) ("an inmate does
> not exhaust available administrative remedies when [he] entirely fails
> to invoke the prison's grievance procedure").  If Plaintiff was unaware
> of the names of the individuals in question he could simply have
> asserted the grievance against "unknown" or "unidentified" persons or
> otherwise described the relevant events in sufficient detail to inform
> prison officials of the conduct of which he was complaining.

*Jones v. Maroulis*, No. 1:10-CV-300, 2011 WL 6960610, at *13 (W.D. Mich. Nov.

28, 2011), *report and recommendation adopted*, No. 1:10-CV-300, 2012 WL

28341 (W.D. Mich. Jan. 5, 2012).  *See also Mahaffey v. Buskirk*, No. 13-14646,

2014 WL 2864099, at *11 n.12 (E.D. Mich. June 24, 2014) (Cohn, J., *adopting

report and recommendation of* Komives, M.J.) (quoting *Jones*).

Here, even if Plaintiff did not know Defendants' names before December 10,

2021 (*i.e.*, the date in question), he should have provided some description of the

individuals he intended to sue, such as by role (*e.g.*, corrections officer, nurse,

transportation officer, etc.), physical description (*e.g.*, gender, build, height, *etc.*),

or some other details.  Without more, Step I does not provide Defendants with

notice of Plaintiff's intent to grieve the officers who prepared Plaintiff for transport

(*e.g.*, Wyatt), the nurses who treated Plaintiff's laceration (Cairnduff, Hunter,

18

Montgomery), or the officers who transported Plaintiff (*e.g.*, Lyons), *i.e.*, "he did not refer to any unidentified officers or medical staff as the subject of his grievance."  (ECF No. 23, PageID.260.)  Thus, <u>at Step I</u>, the MDOC was "prevented . . . from addressing and reviewing these claims on the merits."  (ECF No. 18, PageID.95 (citing *Woodford*, 548 U.S. at 90, 92).)

### b.    Step II

The same cannot be said of Step II.  At some point in January 2022 – *while still located at MRF* – Plaintiff completed a Step II grievance appeal (CSJ-247B) (ECF No. 1, PageID.29), this time providing further information.  Citing MDOC PD 03.03.130 ¶ H ("All seriously ill or injured prisoners shall receive prompt medical attention as set forth in PD 03.04.125 'Medical Emergencies.'") and MDOC PD 03.04.125 ¶ J ("A seriously ill or injured person, unless clearly deceased, shall be transported to an appropriate medical facility as soon as their medical condition permits."), Plaintiff states that Hunter, Martel, Wyatt, Lyons, "and others violated this policy when they showed deliberate indifference and ha[d] knowledge that [he] was seriously injured having a deep cut above [his] right eye[,]" which lead to required stitches in an emergency room.  Yet, "they transported [him] to the next facility 'MRF' injured [and] covered in blood . . . ."  He also mentions "further

19

litigation." (ECF No. 1, PageID.29.)  (*See also* ECF No. 21, PageID.191.)[5]

### i.  Adequate notice as to Hunter, Wyatt, and Lyons

Plaintiff's Step II appeal provided adequate notice as to the MDOC Defendants.  Plaintiff "directly named" Hunter, Wyatt, and Lyons at Step II, seemingly because he had by that point learned of their names from Counselor Harrison.  (ECF No. 21, PageID.173-175.)  Moreover, Plaintiff contends his mention of "further litigation" put the MDOC "on notice of [his] intent to sue." (ECF No. 21, PageID.174.)

Warden DeAngelo's Step II response is dated January 21, 2022.  (ECF No. 1, PageID.37.)  Rather than rejecting the appeal, she appears to have addressed it on the merits.  Based on her summary of the Step I grievance – *i.e.*, "Prisoner Littleton states he received a deep cut above his right eye before transferring out to [MRF] by officers[,]" (ECF No. 1, PageID.37) – Plaintiff contends "the MDOC acknowledges that MDOC 'officers' were involved in the transferring out process." (*Id.*, PageID.174.)  Even if the "officers" to whom DeAngelo was referring were the officers who had allegedly caused the deep cut, her summary of

---

[5] In his pleading, Plaintiff interprets his Step II appeal as follows:  "I . . . explained how the attending nurses, corrections officers, and transportation officers violated that policy when they failed to follow it.  This is because they allowed me to be transported with a 2-cm laceration above my right eye that was bleeding profusely. I was also in severe pain. . . . ." (ECF No. 1, PageID.7.)

the Step II investigation simply states:  "Request for investigations are handled appropriately."  (ECF No. 1, PageID.37.)  She does not reject the Step II grievance for adding names not included at Step I.  Finally, Plaintiff states, "[a]t no time was [he] interviewed[,]" despite DeAngelo's conclusion that the "[i]ssue will be investigated and handled administratively."  (*Id*.; ECF No. 21, PageID.174.)

In their reply, the MDOC Defendants contend that, "when a grievant names specific individuals at Step I, exhaustion is limited to the named individuals." (ECF No. 23, PageID.259-260 (citing *Brown*, 2019 WL 5436159, at *3).) However, while Brown had advocated that "he named some of the defendants at step III . . . [,]" the Sixth Circuit noted that, "for *Reed-Bey* to apply, Brown would have had to receive a response on the merits as to the defendants at each step of the grievance process[,]" and he "did not."  *Brown*, 2019 WL 5436159, at *3.  Here, where Plaintiff has offered a plausible explanation for not naming the MDOC Defendants at Step I, and where he named them at Step II, and where the Step II response was on the merits, Plaintiff "provided [them] with sufficient detail and a fair opportunity . . . to address the problems that form the basis for this lawsuit." (ECF No. 21, PageID.178-179.)  *See Broder v. Corr. Med. Servs., Inc.*, No. 03-75106, 2008 WL 704229, at *10 (E.D. Mich. Mar. 14, 2008) (Battani, J., *adopting report and recommendation of* Komives, M.J.) ("Where the prison officials themselves overlook a prisoner's failure to comply with procedural requirements

and address the prisoner's grievance on the merits, the procedural default rule

established by *Woodford* is inapplicable.") (ECF No. 21, PageID.181-182; ECF

No. 22, PageID.231).  *See also Reed-Bey*, 603 F.3d at 325 ("When prison officials

decline to enforce their own procedural requirements and opt to consider

otherwise-defaulted claims on the merits, so as a general rule will we.").

ii.     **Inadequate notice as to Cairnduff and Montgomery (ECF No. 19)**

While Plaintiff named Hunter, Martel, Wyatt, Lyons "and others" at Step II

(ECF No. 1, PageID.29), and notwithstanding Plaintiff's correct observation that

his Step II appeal was not rejected (*see* ECF No. 22, PageID.223), the Step II

appeal form does nothing to alert the MDOC that Plaintiff intended to grieve either

Cairnduff or Montgomery.  Without such notice, there *was not* "sufficient detail

and a fair opportunity . . . to address the problems that form the basis of this

lawsuit[,]" (ECF No. 22, PageID.228), or "a chance to address the claims before

they reach federal court.'"  *Watson*, 2017 WL 9477709, at *3.

E.     **Conclusion**

The above recommendations as to the MDOC Defendants and the contract

Defendants are reaffirmed by Plaintiff's Step III appeal – *presumably completed*

*while still at MRF* – which was received at Step III on March 14, 2022.  (ECF No.

1, PageID.29.)  In part, Plaintiff stated that "[t]he aforementioned staff acted with

deliberate indifference with the sole intent to inflict pain by knowing I had a

serious medical [emergency][,]" and that he had "now exhausted all [available] [administrative] remedies" and would be "moving forward with litigation." (*Id.* (emphasis added).)  The Step III appeal was denied on April 1, 2022, stating, *inter alia*:  "Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered." (*Id.*, PageID.33.) (*See also* ECF No. 1, PageID.7-8, PageID.27 ¶ 25.)  It was not rejected for failing to name Hunter, Wyatt, and Lyons before Step II.

Notwithstanding Plaintiff's claims that his Step III grievance appeal "was not rejected" and again "put the MDOC Defendants on notice of his intent to sue[,]" or that "[a]t no time was [he] interviewed[,]" or that, "[i]f the matter had been investigated, the MDOC Defendants [and the contract nurses] would have been identified[,]" (ECF No. 21, PageID.174-175; ECF No. 22, PageID.223-224), the Step III appeal does not offer further detail that would provide notice of an intent to grieve Cairnduff or Montgomery.  Accordingly, as discussed in detail above, the Court should **DENY** MDOC Defendants Wyatt, Lyons & Hunter's motion for summary judgment on the basis of exhaustion (ECF No. 18) and **GRANT** Defendants RN Cairnduff and LPN Montgomery's motion for summary judgment based on exhaustion (ECF No. 19).

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 25, 2025

_____
Anthony P. Patti
United States Magistrate Judge